**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GINETTE CIPRIANI,<br>*on behalf of herself, FLSA Collective Plaintiffs,*<br>*and the Class,*<br><br>               Plaintiff,<br><br>   v.<br><br>NEW ROC SOCIAL LLC,<br>and ALI SAHIN,<br><br>             Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff GINETTE CIPRIANI (hereinafter, "Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants NEW ROC SOCIAL LLC, (the "Corporate Defendant"), and ALI SAHIN ("Individual Defendant") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (i) illegally retained gratuities; (ii) unpaid wages, including overtime compensation, due to time-shaving; (iii) liquidated damages; and (iv) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (i) unpaid minimum wages, due to an invalid tip credit policy; (ii) illegally retained gratuities; (iii) unpaid wages, including overtime compensation, due to time-shaving; (iv) statutory penalties; and (v) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendants discriminated against her on the basis of her sex, gender, race, color, and national origin in violation of the New York State Human Rights Law ("NYSHRL"), and brings this action against Defendants to recover: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

6.      At all relevant times herein, Plaintiff was and is a resident of Westchester County, New York.

7.      At all relevant times, Individual Defendant has owned and operated the following restaurants located in Westchester County, New York:

    i.   New Roc Social: 16 Memorial Hwy, New Rochelle, NY 10801; and

    ii.  Mamaroneck Social: 370 Mamaroneck Ave., Mamaroneck, NY 10543 (now closed).

    (collectively, the "Restaurants")

2

8.    The Restaurants operate as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

(a)  Data from the New York State Liquor Authority Mapping Project ("LAMP") lists Corporate Defendant NEW ROC SOCIAL LLC as the nominal entity representing both New Roc Social and Mamaroneck Social. *See* **Exhibit A**.

(b)  Moreover, the New York Department of State – Division of Corporations website lists Individual Defendant ALI SAHIN as the registered agent of Corporate Defendant NEW ROC SOCIAL, and by extension, the registered agent of both Restaurants. *See* **Exhibit B**.

(c)  The Restaurants share virtually identical logos, with the only difference being the town in which they operate. *See* **Exhibit C**.

(d)  While the Restaurants have separate social media accounts, they regularly cross-promote one another and advertise their shared operations. For example, New Roc Social's social media accounts have promoted the Mamaroneck Social location, and Mamaroneck Social's accounts have promoted New Roc Social, demonstrating the interrelated nature of the Restaurants' operations. *See* **Exhibit D**.

(e)  Employees are interchangeable across the Restaurants. Plaintiff herself worked at Defendants' Mamaroneck Social location on approximately two (2) to three (3) occasions before that location closed, demonstrating that the Restaurants share a common workforce under unified management. Additionally, Individual Defendant ALI SAHIN's mother works as a cook at both the Restaurants.

(f)  The Restaurants have a centralized Human Resources and Administration Department that deals with hiring, firing, and administering all the Restaurants' workforce. For example, Individual Defendant ALI SAHIN has the power to hire and fire employees at both the Restaurants.

9.    Corporate Defendant, NEW ROC SOCIAL LLC, is a domestic limited liability company organized under the laws of New York, with an address for service of process located at 16 Memorial Highway, New Rochelle, NY 10801, and principal places of business located at 16 Memorial Hwy, New Rochelle, NY 10801 and 370 Mamaroneck Ave., Mamaroneck, NY 10543.

10.     Individual Defendant ALI SAHIN is the owner of Corporate Defendant and has operational control of Corporate Defendant. Individual Defendant ALI SAHIN exercises the power to, and also delegates to managers and supervisors the power to: (i) fire and hire employees; (ii) supervise and control employee work schedules; (iii) determine the rate and method of pay; (iv) maintain employment records; and (v) otherwise affect the quality, terms and conditions of employment for Plaintiff and Class Members. Individual Defendant ALI SAHIN has authority over all employee-related decisions, including payroll, personnel, and wage and hour policies concerning Plaintiff and Class Members. Individual Defendant ALI SAHIN additionally exercises the authority to fire and hire, supervise and control work schedules, determine rate and method of pay, maintain employment records, and otherwise affect the terms and conditions of employment for managerial employees who directly supervise Plaintiff and Class Members. Individual Defendant ALI SAHIN ensures that managers implement Defendants' employment policies and pay practices and directs employees to effectively complete their job duties so that Corporate Defendant is operating efficiently and profitably.

11.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

12.     At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL §§ 2 and 651. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers,

and delivery persons, among others employed by Defendants on or after the date that is 6 years before the filing of this Complaint ("FLSA Collective Plaintiffs").

14.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper tips due to a policy of illegally retaining tips, as well as a refusal to pay them for all hours worked due to time-shaving. Plaintiff's claims stated herein are essentially the same as those of FLSA Collective Plaintiffs.

15.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt current and former non-exempt employees, including, but not limited to, waiters, servers, bartenders, food runners, bussers, hosts, barbacks, sommeliers, and delivery persons, employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

17.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked,

the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

18. The proposed Class is so numerous that a joinder of all Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than 40 Members of the Class.

19. Plaintiff's claims are typical of those claims that could be alleged by any Member of the Class, and the relief sought is typical of the relief that would be sought by each Member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) unpaid minimum wages due to an invalid tip credit policy; (ii) illegally retained gratuities; (iii) unpaid wages, including overtime compensation, due to time-shaving; (iv) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law; and (v) failing to provide accurate proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

20. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual Members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former

employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

i.      Whether Defendants employed Plaintiff and the Class within the meaning of New York Labor Law;

ii.     What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and Class Members;

iii.    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

iv.     Whether Defendants properly provided notice to Plaintiff and the Class that Defendants were taking a tip credit; and

v.      Whether Defendants provided proper tip credit notice to Plaintiff and the Class at hiring and annually thereafter.

vi.     Whether Defendants illegally retained tips from Plaintiff and the Class Members;

vii.    Whether Defendants subjected Plaintiff and Class Members to an invalid tip pool;

viii.   Whether Defendants operated their business with a policy of failing to pay Plaintiff and the Class Members for all hours worked, due to time-shaving;

ix.     Whether Defendants provided proper wage statements informing the Plaintiff and Class Members of the amount of tip credit taken for each payment period and their

proper overtime rate of compensation, as required under the NYLL.

x.    Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to Plaintiff and Class Members, per requirements of NYLL;

xi.    Whether Defendants provided Plaintiff and Class Members proper wage statements with each payment of wages, as required under NYLL;

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

24.    In or about April 2022, Plaintiff was hired by Defendants to work as a bartender and server for Defendants' New Roc Social Bar & Lounge, located at 16 Memorial Highway, New Rochelle, NY 10801. Plaintiff was employed by Defendants until on or about November 1, 2025.

25.    Throughout her employment, Plaintiff was paid at a tip credit rate of $11.00 per hour. Class Members were compensated at similar wage rates.

26.    From the start of her employment until in or around April 2023, Plaintiff was regularly scheduled to work four (4) days per week: Mondays and Wednesdays from 7:30 p.m. to 2:30 a.m., and Fridays and Saturdays from 7:30 p.m. to 5:00 a.m., for a total of thirty-three (33) hours per week. From in or around April 2023 to the end of her employment, Plaintiff was regularly scheduled to work three (3) days per week: Wednesdays from 7:30 p.m. to 2:30 a.m., and Fridays and Saturdays from 7:30 p.m. to 5:00 a.m., for a total of twenty-six (26) hours per week.

*Unpaid Gratuities, due to Tip Retention*

27.    At all relevant times, Plaintiff and Class Members were deprived of their lawfully earned gratuities, due to Defendants' tip retention.

28.    Throughout Plaintiff's employment, Defendant ALI SAHIN deducted nine (9) points—approximately 29% of all tips—from the tip pool. Defendant ALI SAHIN's mother, who

is a cook at both Restaurants, also deducted three (3) points, approximately 10% of all tips, from the tip pool. FLSA Collective Plaintiffs and Class Members were similarly deprived of tips due to this illegal policy.

29. Defendants knowingly and willfully operated their business with a policy and practice of retaining tips earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and NYLL.

*Unpaid Wages, due to an Invalid Tip Credit*

30. Plaintiff was paid below the minimum wage at an invalid "tip credit" minimum wage rate. Defendants were not entitled to claim any tip credit allowance under NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) illegally retained tips; and (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period.

31. Throughout Plaintiff's employment, Plaintiff never received any written or verbal notice from Defendants that Defendants were claiming a tip credit on her compensation. Defendants never told Plaintiff that they were deducting tip credits from her wages, nor did she ever receive proper notice as to the amount of tip credit allowances Defendants deducted for each payment period during her employment. Defendants' failure to provide proper tip credit notice renders Defendants' claimed tip credit invalid under the NYLL. Class Members similarly did not receive notice that Defendants were deducting a tip credit from their wages.

32. Further, as discussed above, at all relevant times, Individual Defendant and the restaurants' chef illegally participated in the Restaurants' front-of-house tip pools reducing the amount of tips received by Plaintiff and Class Members. Defendants' illegal tip retention provides an independent basis upon which Defendants' tip credit is rendered invalid under the NYLL.

10

33.     Finally, at all relevant times, Defendants failed to provide proper wage statements indicating that a tip credit allowance was taken against Plaintiff's and Class Members' wages. *See* **Exhibit E**, Plaintiff's Wage Statements. Defendants' failure to provide proper wage statements further renders Defendants' claimed tip credit invalid under the NYLL.

34.     Defendants knowingly and willfully operated their business with an invalid tip credit policy, in violation of the NYLL. As a direct result of Defendants' invalid tip credit policy, Plaintiff and Class Members were paid below the New York State minimum wage.

*Unpaid Wages, due to Timeshaving*

35. At all relevant times, Plaintiff and other employees were only paid for their scheduled hours. However, Defendants often required Plaintiff to stay at work for approximately thirty (30) minutes after the official end of her scheduled shift once per week. As a result of this practice, Plaintiff, FLSA Collective Plaintiffs, and Class Members were time-shaved around 0.5 hours for each week they worked.

36. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked, due to time-shaving, in violation of the FLSA and NYLL.

*WTPA Claims*

37.     At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

38.     At all relevant times, Defendants paid Plaintiff and Class Members in cash and failed to provide any paystubs to them with every weekly payment.

11

39.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

40.    New York courts continue to find sufficient standing to support these claims.  One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

41.    Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the

hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

42.    By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

43.    Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time-shaving.  Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

44.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

45.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff with wage notices and accurate wage statements, in violation of the NYLL.

*Individual Sexual Harassment Claims*

46.    Throughout Plaintiff's employment, Defendant ALI SAHIN subjected Plaintiff to severe and pervasive sexual harassment, creating a hostile, offensive, and discriminatory working environment.

47.    In or around July 2024, while Defendant ALI SAHIN was intoxicated, he made unwelcome sexual advances toward Plaintiff while she was working behind the bar. Specifically, Defendant ALI SAHIN grabbed Plaintiff from behind, pushed his body against Plaintiff's body, and attempted to kiss Plaintiff. During these events, Plaintiff expressed clear disinterest in Defendant ALI SAHIN's conduct and eventually managed to get away from him. Defendant ALI SAHIN's conduct was unwelcome and constituted a physical sexual assault upon Plaintiff in her workplace.

48.    Additionally, throughout Plaintiff's employment, approximately once per month, Defendant ALI SAHIN slapped Plaintiff's buttocks while walking past her. This conduct was routine, unwelcome, and occurred openly in the workplace. Defendant ALI SAHIN's repeated, uninvited physical contact with Plaintiff's body constituted a pattern of ongoing sexual harassment that pervaded Plaintiff's working environment.

49.    Defendant ALI SAHIN's conduct, taken as a whole, subjected Plaintiff to a hostile work environment based on her sex. The harassment was sufficiently severe and pervasive to alter

the conditions of Plaintiff's employment and create an abusive working environment. Defendant ALI SAHIN's position as the owner of the Restaurants meant that Plaintiff had no meaningful avenue to report his conduct, as there was no supervisor, human resources department, or other authority to whom Plaintiff could complain about the owner's behavior. Plaintiff was aware that Defendant ALI SAHIN had told other employees, "If you don't like it, then quit. The door is wide open," which further discouraged Plaintiff from raising complaints about Defendant ALI SAHIN's harassment.

50.     Defendants knew or should have known of the harassment and failed to take any corrective action. Indeed, because the harasser was the owner of the Restaurants, Defendants' liability for the hostile work environment is direct. Defendant ALI SAHIN's harassment was open, brazen, and occurred in the workplace in the presence or potential presence of other employees, yet no remedial measures were ever taken.

51.     As a result of Defendants' discriminatory and hostile conduct, Plaintiff suffered monetary damages and severe emotional distress, including but not limited to anxiety, humiliation, and stress. The pervasive sexual harassment and the hostile work environment took a significant toll on Plaintiff's mental health and well-being.

*Individual Race Discrimination Claims*

52.     Plaintiff is Dominican and is a member of a protected class on the basis of her race, color, and national origin.

53.     Throughout Plaintiff's employment, Defendant ALI SAHIN, who is Turkish, regularly subjected the workplace to overt racial animus against ethnic minorities and made racist remarks in Plaintiff's presence. On one occasion, Plaintiff observed Defendant ALI SAHIN state, in reference to dark-skinned minority patrons, "What do these black motherfuckers want?" On

15

another occasion, Plaintiff observed Defendant ALI SAHIN refer to a dark-skinned customer using the racial slur "n****r."

54.     Plaintiff, like all employees who belonged to ethnic minorities, suffered bigotry and was paid less, received no opportunities for advancement to higher paying positions, and consistently worked shifts which were not lucrative.

55.     As a member of a protected class, Plaintiff was subjected to and forced to work in a hostile work environment permeated by Defendant ALI SAHIN's repeated and overt racial animus. Defendant ALI SAHIN's use of racial slurs and derogatory remarks was severe and pervasive and created a hostile environment charged with racial tension. Defendant ALI SAHIN's consistent use of racial slurs altered the terms and conditions of Plaintiff's employment.

56.     As a member of a protected class who was compelled to work in a racially charged environment created by Defendants' repeated discrimination against others on the basis of race, Plaintiff was herself subjected to unlawful discrimination and a hostile work environment. Defendant ALI SAHIN's racially discriminatory conduct directed at others contributed to and constituted discrimination against Plaintiff.

57.     Consequently, Defendants' discriminatory and hostile actions caused Plaintiff to incur financial losses and experience significant emotional harm, including, but not limited to, anxiety, humiliation, and ongoing stress. The persistent racial discrimination inflicted by Defendants had a substantial and detrimental impact on Plaintiff's mental health and overall well-being.

58. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

59.     Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein.

60.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

63.     At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their tips due to illegally retaining tips, in violation of the FLSA.

64.     At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs all their owed wages, including overtime wages, due to time-shaving.

65.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by

appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

66.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper tips due to illegally retained tips when Defendants knew or should have known such was due.

67.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

68.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid tips, due to illegally retaining tips.

69.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

70.    Plaintiff realleges and incorporates by reference all the above allegations of this complaint as fully set forth herein.

71.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

72.    At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of not paying Plaintiff and Class Members the prevailing New York State minimum wage rate due to Defendants' invalid tip credit policy.

18

73.     At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and Class Members their tips due to illegally retaining tips, in violation of the NYLL.

74.     At all relevant times, Defendants knowingly and willfully had a policy and practice of failing to pay Plaintiff and Class Members all their owed wages, including overtime wages, due to time-shaving.

75.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage and hour notices, at date of hiring and annually thereafter, in violation of NYLL.

76.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage statements, in violation of NYLL.

77.      Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid minimum wages, illegally retained gratuities, reasonable, statutory penalties, attorneys' fees, and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**DISCRIMINATION IN VIOLATION
OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**(New York State Executive Law § 296 et seq.)**

78.     Plaintiff realleges and incorporates by reference all the above allegations of this complaint as fully set forth herein.

79.     The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to

19

bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

80.     Here, Plaintiff GINETTE CIPRIANI was discriminated against on the basis of her sex and gender and was subjected to severe and pervasive sexual harassment during her employment, including repeated unwelcome physical contact and a physical sexual assault by Defendant ALI SAHIN, the owner of the Restaurants.

81.     Plaintiff was further discriminated against on the basis of her race, color, and national origin. Plaintiff is Dominican and a member of a protected class. As set forth above, Defendant ALI SAHIN subjected Plaintiff to a hostile work environment permeated by his overt and repeated racial animus, including his use of racial slurs and derogatory remarks regarding Black and Afro-Latino individuals in the workplace.

82.     As a member of a protected class who was forced to witness Defendants' repeated discrimination against others on the basis of race, Plaintiff was herself subjected to unlawful discrimination and a hostile work environment in violation of the NYSHRL. The racially discriminatory conduct was severe and pervasive and altered the terms and conditions of Plaintiff's employment.

83.     Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYSHRL.

84.     Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  Disgorgement of illegally retained gratuities, due under the FLSA and NYLL;

d.  An award of unpaid wages, due to invalid tip credit deductions under the NYLL;

e.  An award of unpaid wages, including overtime, due to a policy of time-shaving, due under the FLSA and NYLL;

f.  An award of all applicable damages under the NYSHRL due to sexual harassment and racial discrimination, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs;

g.  An award of liquidated damages as a result of Defendants' willful violations of the NYLL;

h.  An award of statutory penalties due to Defendants' willful violations of the WTPA;

i.  An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

j.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.    Designation of Plaintiff as Representative of the Class; and

m.   Such other and further legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all causes of action and issues so triable as of right by jury.

Date: July 21, 2026                    Respectfully submitted,
     New York, New York          By:  /s/ *C.K. Lee*
                                     C.K. Lee, Esq.
                                     **LEE LITIGATION GROUP, PLLC**
                                     C.K. Lee (2903557)
                                     148 W. 24th Street, 8th Floor
                                     New York, NY 10011
                                     Tel.: 212-465-1180
                                     Fax: 212-465-1181
                                     *Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

22